HYDE *v.* BOARD OF COMMISSIONERS OF THE COUNTY OF WELLS.

[No. 26,203. Filed November 21, 1935.]

*Simmons & Simmons, Sturgis, Stine & Sturgis*, for appellant.

*E. C. Vaughn, Eichorn, Gordon & Edris*, for appellee.

FANSLER, J.—Appellee, The Board of Commissioners of the County of Wells, preferred charges against appellant as a basis for removing him from the office of county highway superintendent of Wells county. Appellant was notified of the charges, and appeared at the time fixed for hearing, and filed an answer. Evidence was heard, the cause taken under advisement, and the board of commissioners rendered judgment sustaining the charges and dismissing appellant. Appellant appealed to the Wells circuit court, where appellee moved to dismiss on the ground that the proceeding before the board of commissioners was a special action, administrative in character, and that an appeal does not lie. The motion to dismiss was overruled, and appellant filed a motion for a change of venue from the county. The cause was sent to the Grant circuit court, and, upon application of appellee, the venue was again changed to Delaware county. The cause was submitted to the court for trial, and a jury was impaneled to aid the court in passing on the facts. There was judgment sustaining the charges of malfeasance in office and removing appellant from the office of county highway superintendent.

248

The only errors assigned are predicated upon the overruling of appellant's motion for a new trial and his motion in arrest of judgment.

Appellant does not question the sufficiency of the evidence to sustain the charges of malfeasance. It is contended that the circuit court had no jurisdiction of the subject-matter. This is upon the theory that this is a special action; that the circuit court on appeal has no greater jurisdiction of the subject-matter than had the board of commissioners; that the board of commissioners had no power or authority to prefer charges against appellant, and therefore become the plaintiff in an action against appellant in its own court; and that the statute providing for removal of appellant by the board of commissioners is unconstitutional for the reason that there is no provision for the giving of notice of the time and place of hearing; that due process of law requires that the statute shall provide for notice of some kind, and that a notice not provided by law is, in legal contemplation, no notice.

Appellant's contention apparently rests upon the supposition that he has some property right in the office in question, which is protected by the due-process clause of the Fourteenth Amendment to the Federal Constitution. But this view is not sustained by the authorities. *Taylor* v. *Beckman* (1900), 178 U. S. 548, 20 S. Ct. 890; *People* v. *Kipley* (1897), 171 Ill. 44, 49 N. E. 229; *Taylor* v. *Beckham* (1900), 108 Ky. 278, 56 S. W. 177; *Attorney General* v. *Jochim* (1894), 99 Mich. 358, 58 N. W. 611.

It may be that a public office may be considered property within the protection of constitutional provisions as to due process in controversies between two individuals for possession of the office. It was said by the Supreme Court of California:

"As between the office-holder and individuals in their private capacity, and perhaps as against any

authority except the sovereign power itself acting in pursuance of a power of removal expressly reserved or necessarily implied from the nature of the office, the officer is entitled to the full protection of the law in his right to hold the office practically to the same extent as if it were private property. But here we have a controversy between the officeholder and that functionary of sovereignty who is invested with the power of removal, and the question is whether or not the officer has a right to the office which the sovereign power which conferred it must respect as private property. The authorities are uniform that in such a controversy the office has not the characteristics of property." *In Matter of Carter* (1903), 141 Cal. 316, 319, 74 Pac. 997.

The right to hold office is a privilege. The office is created by the state for the public good, and not for private benefit. Where the Constitution confers ██ certain rights upon a public officer, those rights may not be invaded by the Legislature. But the office in question is a legislative one, and the Legislature had full power to provide for the removal of the incumbent by any agency it chose, summarily or for cause.

It is generally held that, where an officer holds for a fixed term, and is only removable for cause, he is entitled to notice and a hearing, notwithstanding ██ the statute providing for removal is silent on those questions. The statute in question here provides for hearing, and appellant was given more than ten days' notice, and did appear, and had opportunity to be heard in his own defense. The statute (section 8506, Burns 1926) which creates the office of county highway superintendent provides:

"The county highway superintendent may be removed by the board of commissioners, after a hearing for incompetency, malfeasance or neglect of duties, but such board of commissioners shall not interfere with the county highway superintendent in his duties of hiring or discharging employees."

The authorities cited by appellant to support the contention that a notice not authorized by law is, in legal contemplation, no notice, involve proceedings intended to affect personal or property rights protected by constitutional provisions. But, as pointed out, the rights involved in holding a public office do not come within the protection of those provisions. The right to hold the office is subject to the limiting conditions provided for in the statute creating it. The Legislature might have provided that the county highway superintendent should serve at the pleasure of the board of county commissioners, in which case he might have been removed at any time, without notice or hearing. It was said by the Supreme Court of Missouri, in *State* v. *Walbridge* (1894), 119 Mo. 383, 394, 24 S. W. 457:

> "In the case presented, the power to remove the officer is 'for cause,' and no notice is mentioned as requisite to be given to the officer to be proceeded against. But the law in accordance with the principles of justice—principles which are fundamental and eternal, will require that notice be given before any person be passed upon, either in person, estate or any other matter or thing to which he is entitled. And though the statutes do not in terms require notice, the law will imply that notice was intended. . . . And what the law will imply, is as much part and parcel of a legislative enactment, as though set forth in terms."

Since the statute provides for a hearing, which must be construed as an opportunity for the officer to be heard, it necessarily contemplates that he be apprised of the charges against him, and therefore it is but reasonable to construe the enactment as intending that notice shall be given. It is true that the time at which the notice be given is not fixed, but in such cases notice at a reasonable time before the date of hearing is considered as intended. Notice was served on appellant on March 18, 1931, and the date of hearing

fixed in the notice was April 2, 1931. We must construe this to be reasonable notice.

Appellant contends that the board of county commissioners had no authority to prefer charges against him, and thus become the plaintiff in an action against appellant in its own court, and then try and decide the merits of the action. But the statute must be construed as authorizing the board of commissioners to conduct a hearing upon the question of whether or not the highway superintendent is incompetent, or guilty of malfeasance, or neglect of duty, and that no formal complaint or charges are necessary. It is a special proceeding which the Legislature has a right to establish if it sees fit. It may be argued that it is unjust to provide for the trial of the superintendent by those who are in a sense his accusers, but this is no reason why the Legislature may not so provide. It must be remembered that appellant's personal or property rights are not affected by the proceeding. The only question involved, and to be determined, is whether or not the privilege of holding the office shall be withdrawn. Statutory provisions for the removal of officers by executive, legislative, and ministerial agencies, upon hearing, for causes suggested or filed by the removing body, are not uncommon.

In *Hastings* v. *Board of Com'rs.* (1933), 205 Ind. 687, 188 N. E. 207, this court considered the question of whether or not there was a right to an appeal to the circuit court from the judgment of the county commissioners removing a county highway superintendent. Neither the majority nor the minority opinions in that case were intended to indicate a view that the Constitution requires that the board of county commissioners shall function entirely ministerially or entirely judicially. In *State ex rel. Board* v. *Board, etc.* (1908), 170 Ind. 595, 618, 85 N. E. 513, it is said: "We will now

consider the objection that said act violates article 6, §10, of the state Constitution. Boards of commissioners, at the time the present Constitution took effect, had judicial powers—the powers of courts. 1 Elliott, Gen. Prac., §197; *State ex. rel.* v. *Board, etc.* (1885), 101 Ind. 69, 71, 72; *Board, etc.* v. *Connor* (1900), 155 Ind. 484; *Strayer* v. *Taylor, supra.*

"Article 3, §1, of the Constitution provides: 'The powers of the government are divided into three separate departments; the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided.'

"Such boards of commissioners, being courts, belonged to the judicial department of the state government, and the Constitution recognized that fact by providing in article 6, §10: 'The General Assembly may confer upon the boards doing county business in the several counties, powers of a local, administrative character.' No such provision would have been necessary if boards of commissioners belonged to the 'executive, including the administrative,' department of the state government."

In certain cases statutes provide for appeals from the board of county commissioners to the circuit court in matters in which the board acts ministerially, but in such instances the so-called appeal is treated as merely a method of procedure by which an action originates in the circuit court for the purpose of determining whether or not the board acting ministerially has exceeded its jurisdiction.

Under section 5976, Burns 1926, §26-901, Burns 1933, it has been consistently held that appeals from decisions of the commissioners may be taken to the circuit court when the decision involves judicial actions. *State ex rel.*

*Starry* v. *Board* (1894), 136 Ind. 207, 35 N. E. 1100; *Board* v. *Davis* (1894), 136 Ind. 503, 36 N. E. 141; *Potts* v. *Bennett* (1895), 140 Ind. 71, 73, 39 N. E. 518.

But that when county boards act in a purely ministerial capacity no appeal lies. *Platter* v. *Board* (1885), 103 Ind. 360, 2 N. E. 544; *Bunnell* v. *Board* (1890), 124 Ind. 1, 24 N. E. 370; *Board* v. *Gillies* (1894), 138 Ind. 667, 38 N. E. 40; *Potts* v. *Bennett, supra.*

It was said in *Potts* v. *Bennett, supra:*

> "It has become thoroughly settled in this court, that the board of commissioners are clothed by statute with administrative or ministerial powers, and also with judicial powers.
>
> "When they exercise administrative or ministerial functions they do not act as a court, but in their capacity as a corporation. When they exercise judicial functions, then they act as a court. It is only when they act as a court and exercise judicial functions that an appeal lies from their decisions."

It would seem that, where proceedings judicial in their nature are delegated to the jurisdiction of the board of county commissioners, the statute providing for appeals to the circuit court from any decision of the board, judicial in character, would apply regardless of whether the board of county commissioners be considered as a court or a ministerial body, and regardless of whether its judicial functions are incidental or predominant.

Judicial powers vested in the board have been limited to the field with which it comes in contact in the exercise of its ministerial duties. Consistent with the general practice, jurisdiction has been vested in the county board to hear and determine the question of whether the county highway superintendent shall be removed, doubtless because through its general supervision of highways it is necessarily conversant with such matters. If proceedings to remove a highway superintendent are judicial in their nature, an appeal from its

decision will lie to the circuit court; otherwise it will not. It was said in *Board of Com'rs.* v. *Johnson* (1890), 124 Ind. 145, 152, 24 N. E. 148:

> "The power to oust an officer rightfully in office is essentially a judicial one, except where it is exercised by the appointing power. *State ex rel.* v. *Harrison,* 113 Ind. 434; *Page* v. *Hardin,* 8 B. Mon. 648; *Dullam* v. *Willson,* 53 Mich. 392."

No question concerning the removal of an officer by the appointing power was before the court in that case, and so much of the quotation as refers to an exception where the power is exercised by the appointing power is *obiter dictum*. We have been able to find no other authority that refers to the exception except 22 R. C. L., p. 573, where we find the statement: "It has been said that a removal for cause involves the exercise of judicial power, except where it is exercised by the appointing power." The only authority cited as sustaining the exception is *Board of Com'rs* v. *Johnson, supra.* The cases cited in the quotation do not support the dictum.

The opinion in *State ex rel.* v. *Harrison, supra,* deals with the right of the Governor to declare a vacancy in an office at the expiration of the term for which the officeholder was elected by the Legislature. The controlling question was whether a vacancy existed. No question of removal was involved. It was held, however, that the question of whether or not a vacancy existed was one of judicial concern. It appears from the opinion in *Page* v. *Hardin, supra,* that the officer removed was appointed by the Governor with the advice and consent of the Senate, and removed by the Governor. It was held that a proceeding for the removal of an officer for cause upon hearing "is essentially judicial," and the case is authority for the proposition that there is no exception to the general rule, and that it applies when the power is exercised by the appointing power as well as in other cases. In *Dullam* v. *Willson, supra,* the Governor of

Michigan had undertaken to remove an officer appointed by him, and to appoint a successor. It was held that a statute permitting the Governor to remove certain officers for cause was unconstitutional, since "a determination whether specified causes exist is the exercise of judicial functions," and that the Constitution as it then existed did not authorize the delegation of judicial power to the Governor. The case therefore does not support the quoted dictum, but is authority for the proposition that removal for cause even by the appointing power involves the exercise of a judicial function.

In *Stiles* v. *City of Lowell* (1919), 233 Mass. 174, 123 N. E. 615, it is held that, in removing a city ·officer for cause, upon hearing, a city council acts judicially.

The authorities ·cited in *Board of Com'rs* v. *Johnson,* *supra,* do not support the statement that there is an exception in case of removal by the appointing power. They are, in fact, authorities to the contrary, and we find no other authority which announces or supports that proposition, nor do we find reason for making a distinction in characterizing the function performed in removing an officer for cause upon hearing when it happens to be exercised by the appointing power. It does not seem unreasonable to conclude that the court was merely safeguarding a general statement, and had reference to the removal of an officer by the appointing power in those cases in which the officer serves at the pleasure of the appointing power, and the removal is not for cause upon hearing.

It becomes pertinent to inquire whether a county highway superintendent is an officer or an employee. It was said by Judge Cooley in *People* v. *Langdon* (1879), 40 Mich. 673, 682:

> "The officer is distinguished from the employee in the greater importance, dignity and independence of his position; in being required to take an official

oath, and perhaps to give an official bond; in the liability to be called to account as a public offender for misfeasance or nonfeasance in office, and usually, though not necessarily, in the tenure of his position. In particular cases other distinctions will appear which are not general."

In a note appearing in 17 Am. & Eng. Ann. Cas. 452, in which hundreds of cases from many jurisdictions are digested, it is said by the annotator:

"It may be stated as a general rule, fairly deducible from the cases discussing the question, that a position is a public office when it is created by law, with duties cast upon the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; . . ."

It was said by the Supreme Court of Massachusetts in *Attorney General* v. *Tillinghast* (1909), 203 Mass. 539, 543, 89 N. E. 1058, 17 Am. & Eng. Ann. Cas. 449:

"The holder of an office must have intrusted to him some portion of the sovereign authority of the state. His duties must not be merely clerical, or those only of an agent or servant, but must be performed in the execution or administration of the law, in the exercise of power and authority bestowed by the law. (Authorities.) A mere employee has no such duties or responsibilities. A public officer is one 'whose duties are in their nature public, that is, involving in their performance the exercise of some portion of the sovereign power whether great or small, and in whose proper performance all citizens irrespective of party are interested, either as members of the entire body politic or of some duly established subdivision of it.' . . . The assistant auditor is to be under the direction of the auditor and to assist him in his duties, and, in the absence of the auditor or during a vacancy of that office, temporarily to discharge those duties. These are public functions, involving the exercise of some part of the sovereign power of the commonwealth. The fact that the authority of one officer is subordinate to that of another does not prevent him from

being an officer. A subordinate or inferior officer is none the less an officer. . . .

"Other important tests are the tenure by which a position is held, whether its duration is defined by the statute or ordinance creating it, or whether it is temporary or transient or for a time fixed only by agreement; whether it is created by an appointment or election, or merely by a contract of employment by which the rights of the parties are regulated; whether the compensation is by a salary or fees fixed by law, or by a sum agreed upon by the contract of hiring. . . ."

We feel that these expressions fairly summarize the characteristic distinction between an officer and an employee.

The statute provides that "the board of county commissioners shall . . . appoint a county highway superintendent, who shall be a competent person, thoroughly familiar with and having knowledge of local conditions, so that he may properly oversee the maintenance of the road surface and road drainage of the county highways, who is competent to properly conduct and administer the affairs of the office of the county highway superintendent, to keep the necessary accounts and otherwise execute his duties in a competent and efficient manner. . . . The county highway superintendent shall hold his office for four years and until his successor is appointed and qualified. . . . The county highway superintendent may be removed by the board of commissioners, after a hearing for incompetency, malfeasance or neglect of duties, but such board of commissioners shall not interfere with the county highway superintendent in his duties of hiring or discharging employees. The county highway superintendent shall execute a bond. . . . Any vacancies shall be filled by the board for unexpired terms." The statute fixes his compensation and describes his duties at length and in detail. He is required to exercise his judgment in the planning of ways

and means for caring for the roads under his supervision, and in recommending what roads shall be maintained by the patrol system. He has jurisdiction to indicate to his assistant superintendent the certain definite mileage of road to be patroled in his district, and to direct the assistant superintendent in the patrolling of roads. He is authorized to exercise judgment and discretion in distributing materials for road repairs. He is required to make a survey and to report specifically what machinery, implements, transportation facilities, road materials, or other equipment will be needed, and what amount of money should be available to pay for the same. He is required to determine and advise whether in his judgment it would be advisable to pay for teams, labor, and assistants more than is provided by law; and the county commissioners are required to give his reports and recommendations careful consideration, and "either approve or alter and approve same, and recommend to the county council a sufficient levy for the coming year so as to provide funds which shall be used to carry out the provisions specified in said report." His reports are made subject to public inspection. He is given general supervision of the maintenance of all highways, bridges, and culverts of the county, and jurisdiction to expend sums not exceeding $50 without the approval of the board of commissioners. He is given police power in the control of the free gravel roads of the county, which we assume to mean that he may in his discretion close or otherwise regulate the use of highways in emergencies. He is required to "establish standards" for the maintenance of bridges, culverts, and roads. He is required to examine the reports and vouchers of all of his assistants, and to meet with the county commissioners and advise with them in the matter of maintenance of roads under his supervision. He is required to divide the total mileage of the county

highways and appoint assistant superintendents for each district, and assign mileage to them for supervision. The board of commissioners is given power to contract for the purchase of such materials, tools, and machinery as the county superintendent may from time to time deem necessary. He is required to call a meeting of all the assistant superintendents at least once a year to discuss matters concerning highways, and to do many other things which indicate that he is a public officer, charged with independent discretion in many instances in matters involving the sovereign power and in which the public is interested. It is true that in some matters he is required to advise with the county commissioners, and that in some matters he may not act without their consent or approval. But this is true of the county commissioners themselves in respect to contracts and expenditures, which they may not make without a definite appropriation for that purpose by the county council. It seems clear that, under the tests prescribed by the authorities, the county highway superintendent is an officer and not a mere employee.

A distinction must be made between the removal of a public officer and a mere employee, such as a teacher, policeman, or fireman. It is generally held that, in removing its employees, the board that employs them acts ministerially, even where they are removable for cause, and upon hearing.

We must conclude that the board of commissioners had jurisdiction to hear and determine the question of whether or not appellant should be removed for incompetency, malfeasance, or neglect of duty; that the statute contemplates and intends that notice be given, and that appellant had reasonable notice. The county highway superintendent is a public officer, and in removing him the board of county commissioners acted judicially, and appellant had a right to an appeal and a trial of

the issue in the circuit court. His appeal was granted, and he had a trial of the issue. In both trials there was a finding against him, and he does not question the sufficiency of the evidence to sustain the charges. It will be noted that if the board had acted ministerially and not judicially its action was final and conclusive, and there was no appeal, and, since the finding was against appellant, he was concluded in any event.

Judgment affirmed.

Treanor, C. J., and Roll, J., concurring in result:

We concur in the result and concur in the reasoning of the opinion except that portion which holds that the board of county commissioners acted in a judicial capacity in the discharge of appellant. We believe that the board of county commissioners, in discharging appellant, acted in an administrative capacity. For a full discussion of our views, see dissenting opinion in *Hastings* v. *Board of Com'rs.* (1933), 205 Ind. 687, 188 N. E. 207.