**COMMON COUNCIL OF the CITY OF PERU, Indiana, Jim Baber, Herbert Anderson, Robert Temple, Carroll Bankston, Troy Austin, Daniel Doyle, John Alfrey, Appellant (Defendant Below),**

v.

**PERU DAILY TRIBUNE, INC., and Perry T. Fulkerson, Appellees (Plaintiffs Below).**

No. 2-482A122.

Court of Appeals of Indiana, Second District.

Oct. 18, 1982.

Patrick J. Roberts, J. Richard Sims, Cole, Haig, Roberts & Sims, Peru, for appellant.

Richard W. Cardwell, Ober, Symmes, Cardwell, Voyles & Zahn, Indianapolis, for appellees.

SHIELDS, Judge.

The Common Council of the City of Peru (Council) appeals the trial court's grant of a permanent injunction against the Council, enjoining it from holding executive sessions *to interview* applicants for a vacancy on the City of Peru Utilities Service Board in threatened violation of the Indiana Open Door Law, I.C. 5–14–1.5–1 to 5–14–1.5–7 (Burns Code Ed., Supp. 1982). The injunction was sought by the Peru Daily Tribune, Inc. and Perry T. Faulkerson (Tribune). The issues on appeal are:

1) whether members of a municipal board are employees or officers;

2) whether Tribune must show "great injury" to obtain injunctive relief pursuant to I.C. 5–14–1.5–7(a); and

3) whether the Tribune sustained its burden of proof.

We affirm.

## DECISION

■ At the outset, we state our standard of review of a trial court's discretionary decision to grant or deny an injunction. We consider only the evidence which supports the trial court's decision along with all reasonable inferences and reverse only where the evidence leads to a conclusion directly opposite to the conclusion of the trial court. We neither reweigh the evidence nor judge the witnesses' credibility. *State ex rel. Department of Natural Resources v. Mason,* (1981) Ind.App., 416 N.E.2d 1312. Furthermore, our judgment is not substituted for the trial court's even though the circumstances might justify a different result. *State ex rel. Stream Pollution Control Board v. Town of Wolcott,* (1982) Ind.App., 433 N.E.2d 62, 65.

I

■ The undisputed evidence reveals Council planned[1] to hold executive sessions[2] to interview applicants for appointment to the city utility service board.[3] Tribune claims the plan constituted a threatened violation of I.C. 5–14–1.5–1 *et seq.* Council argues the proposed sessions are excepted by I.C. 5–14–1.5–6(a)(iv) which states, in part:

"Executive sessions may be held only in the following instances: . . . interviews with prospective employees;"[4]

Thus, we decide the issue of whether applicants for a municipal board position

---

1. Neither party disputes the planned conduct by Council constituted a meeting as defined by I.C. 5–14–1.5–2(c) (Burns Code. Ed., Supp. 1982).

2. "(f) 'Executive session' means a meeting from which the public is excluded [,] except (,) the governing body may admit those persons necessary to carry out the purpose of the executive session."
I.C. 5–14–1.5–2(f).

3. I.C. 8–1–2–100 (Burns Code Ed., 1973).

4. Council supports its argument by specific reference to 1980 Op.Ind.Atty.Gen. No. 35 and the definition of "employee" within the Indiana Tort Claims Act. We do not find these authorities persuasive.

The Attorney General's Opinion addresses the question whether a screening committee appointed by a mayor to interview and recommend applicants to serve on the school board is a governing body under the Open Door Law and assumes, by merely reciting the statutory provisions, that the applicants are prospective employees. Furthermore, official opinions of the attorney general are without precedential effect and not binding on this court. *Illinois-Indiana Cable Television Ass'n. v. Public Service Commission,* (1981) Ind.App., 427 N.E.2d 1100.

The Indiana Tort Claims Act, I.C. 34–4–16.–5–1 *et seq.* (Burns Code Ed., Supp. 1982), and the Open Door Law neither concern the same subject matter nor the same policy. In fact, the subject matter and policy of the Tort Claims Act, protecting governmental entities and their officials and employees from tort liability, support the result we reach. If those entities and individuals who constitute the "government" are to be so protected, then at least the selection of public officials/officers, whose duties involve the exercise of this sovereign power, should be subject to open public scrutiny as a threshold means of protecting the public by ensuring their quality, etc.

are "prospective employees" under I.C. 5–14–1.5–6(a)(iv).[5]

In 1977, the legislature passed the Indiana Open Door Law which expanded the public meeting provision of the Hughes Anti-Secrecy Act, I.C. 5–14–1–4 (this provision repealed 1977) (Burns Code Ed., 1974). The intent behind the Indiana Open Door Law is clearly stated:

"In enacting this chapter [5–14–1.5–1—5–14–1.5–7], the general assembly finds and declares that this state and its political subdivisions exist only to aid in the conduct of the business of the citizens of this state. It is the intent of this chapter that the deliberations and actions of public agencies be conducted and taken openly, unless otherwise expressly provided by statute, in order that the citizens may be fully informed. The purposes of this chapter are hereby declared to be remedial, and its provisions are to be liberally construed with the view of carrying out its policy."

I.C. 5–14–1.5–1. Thus, we are instructed to construe the statutory provisions of the Open Door Law consistently with its declared policy that the business of public agencies should be openly exposed to public scrutiny.

 In construing this statutory provision, it is our duty to give effect to the intention of the legislature. *Barr v. Sun Exploration Co.*, (1982) Ind.App., 436 N.E.2d 821. Where, as here, the words are clear and unambiguous, the words will be given their plain, ordinary and unbridled meaning. *Marion County Department of Public Welfare v. Methodist Hospital of Indiana, Inc.*, (1982) Ind.App., 436 N.E.2d 123, 126. It can be presumed the legislature intended its language to be applied in a logical manner consistent with the underlying policies and goals of the statute in question. *Frost v. Review Board of Indiana Employment Security Division*, (1982) Ind.App., 432 N.E.2d 459, 461.

 Further, it is important to recognize what the statute does not say as well as what it does say. When certain items or words are specified or enumerated in the statute, then, by implication, other items or words not so specified are excluded. *In re Wardship of Turrin,* (1982) Ind.App., 436 N.E.2d 130, 132. Finally, exceptions to a statute and its operation should be strictly construed by placing the burden of proving the exception upon the party claiming it. *Merimee v. Brumfield,* (1979) Ind.App., 397 N.E.2d 315; *News & Observer Publishing Co. v. Interim Board of Education,* (1976) 29 N.C.App. 37, 223 S.E.2d 580, 586; 73 Am. Jur.2d *Statutes* § 313 (1974).

Other states, in examining their respective "Open Door" or "Sunshine" laws, follow these same mandates, particularly the principle of strict construction of statutory exceptions. *Miglionico v. Birmingham News Co.,* (1979) Ala., 378 So.2d 677; *Town of Palm Beach v. Gradison,* (1974) Fla., 296 So.2d 473; *Canney v. Board of Public Instruction,* (1973) Fla., 278 So.2d 260; *Times Publishing Co. v. Williams,* (1969) Fla.App., 222 So.2d 470; *Daily Gazette Co. v. Town of Cobleskill,* (1981) 111 Misc.2d 303, 444 N.Y. S.2d 44; *News & Observer Publishing Co.,* 223 S.E.2d at 580.

 Applying these principles, we hold municipal board applicants are not "prospective employees" but rather prospective officers.

An employee is commonly defined as:
"A person in the service of another under any contract of hire, express or implied, oral or written, where the employer has the power or right to control and direct the employee in the material details of how the work is to be performed. *Riverbend Country Club v. Patterson,* Tex.Civ.App., 399 S.W.2d 382, 383. One who works for an employer; a person working for salary or wages.

───

5. We neither express nor have an opinion as to whether a governing body has jurisdiction over prospective appointees such that I.C. 5–14–1.5–6(a)(v) would authorize an executive session limited in purpose to an inquiry as to any "alleged misconduct" of an appointee which would reflect, impair, etc. upon his or her appointment.

"Generally, when person for whom services are performed has right to control and direct individual who performs services not only as to result to be accomplished by work but also as to details and means by which result is accomplished, individual subject to direction is an 'employee'.

" 'Servant' is synonymous with 'employee'. *Gibson v. Gillette Motor Transport,* Tex.Civ.App., 138 S.W.2d 293, 294; *Tennessee Valley Appliances v. Rowden,* 24 Tenn.App. 487, 146 S.W.2d 845, 858. However, 'employee' must be distinguished from 'independent contractor,' 'officer,' 'vice-principal,' 'agent,' etc."

Black's Law Dictionary 471 (rev. 5th ed. 1979).

Public officer is commonly defined as:

"An officer of a public corporation; that is, one holding office under the government of a municipality, state, or nation. One occupying a public office created by law. One of necessary characteristics of 'public officer' is that he performs public function for public benefit and in so doing he be vested with exercise of some sovereign power of state."

*Id.* at 978.

Case law supports these common definitions. Our supreme court in *Hyde v. Board of Commissioners of Wells Co.,* (1935) 209 Ind. 245, 198 N.E. 333, observed the following discussion "fairly summarizes the characteristic distinction between an officer and an employee":

"It was said by Judge Cooley in *People v. Langdon* (1879), 40 Mich. 673, 682:

'The officer is distinguished from the employee in the greater importance, dignity and independence of his position; in being required to take an official oath, and perhaps to give an official bond; in the liability to be called to account as a public offender for misfeasance or nonfeasance in office, and usually, though not necessarily, in the tenure of his position. In particular cases other distinctions will appear which are not general.'

"In a note appearing in 17 Am. & Eng. Ann.Cas. 452, in which hundreds of cases from many jurisdictions are digested, it is said by the annotator:

'It may be stated as a general rule, fairly deducible from the cases discussing the question, that a position is a public office when it is created by law, with duties cast upon the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; ...'

"It was said by the Supreme Court of Massachusetts in *Attorney General v. Tillinghast* (1909), 203 Mass. 539, 543, 89 N.E. 1058, 17 Am. & Eng.Ann.Cas. 449:

'The holder of an office must have intrusted to him some portion of the sovereign authority of the state. His duties must not be merely clerical, or those only of an agent or servant, but must be performed in the execution or administration of the law, in the exercise of power and authority bestowed by the law. (Authorities.) A mere employee has no such duties or responsibilities. A public officer is one "whose duties are in their nature public, that is, involving in their performance the exercise of some portion of the sovereign power whether great or small, and in whose proper performance all citizens irrespective of party are interested, either as members of the entire body politic or of some duly established subdivision of it." ... The assistant auditor is to be under the direction of the auditor and to assist him in his duties, and, in the absence of the auditor or during a vacancy of that office, temporarily to discharge those duties. These are public functions, involving the exercise of some part of the sovereign power of the commonwealth. The fact that the authority of one officer is subordinate to that of another does not prevent him from being an officer. A subordinate or inferior officer is none the less an officer. ...

'Other important tests are the tenure by which a position is held, whether its duration is defined by the statute or ordinance creating it, or whether it is temporary or transient or for a time fixed only by agreement; whether it is created by an appointment or election, or merely by a contract of employment by which the rights of the parties are regulated; whether the compensation is by a salary or fees fixed by law, or by a sum agreed upon by the contract of hiring.' "

*Hyde,* 209 Ind. at 255–57, 198 N.E. at 337. *See Book v. State Office Building Commission,* (1957) 238 Ind. 120, 152–53, 149 N.E.2d 273, 290; *Ulrich v. Beatty,* (1966) 139 Ind. App. 174, 182, 216 N.E.2d 737, 742–43, *reh'g denied,* 139 Ind.App. 215, 217 N.E.2d 858; *Union Township v. Hays,* (1965) 138 Ind. App. 280, 282–83, 207 N.E.2d 223, 224–25.

I.C. 8–1–2–100 (Burns Code Ed., 1973) provides for the creation of a utility service board by a referendum. If approved, the statute mandates the common council to provide, by ordinance, for the number of members of the board (not less than three nor more than seven), the manner of their appointment (a majority by the executive head of the municipality, a minority by the municipal council), their salaries, their term (four years), and the powers and duties of the board. The latter include, for example:

1. selection of a manager;
2. fixing the number and compensation of all employees;
3. preparing and submitting a budget to the council;
4. general supervision over the utility;
5. fixing the policy of control, including establishment of rates and other regulations;
6. adopting rules and regulations concerning employee policies.

The enabling ordinance of the City of Peru, mandated by statute, provides in part:

"SECTION 2. Such Board shall be composed of five (5) members, not more than a majority of whom shall be members of the same political party. Each member appointed shall have been a resident of the City of Peru, Indiana for at least three years prior to the date of his appointment; shall not be an employee or officer of any public utility, and shall hold no other elected or appointed public office, and *shall take and subscribe an oath of office* upon their appointment to said Board. No member shall serve more than two (2) consecutive terms upon said Board, including any unexpired term to which such member may be appointed.

. . . .

"SECTION 4. The respective terms of office of each member of such Board shall be for four (4) years, and the first appointments shall be so arranged whereby such terms of office shall hereafter alternate. . . .

"SECTION 5. Upon the expiration of any term of office or a vacancy therein by reason of death, resignation, or otherwise, such office shall be *filled by appointment by the authority which originally appointed such expired or vacated office.* Any vacancy prior to the expiration of the term of office shall be filled by appointment for the remainder of the unexpired term thereof. *Any member of the Board may be removed or impeached from office in the same manner and upon the same terms and conditions as provided by law for any municipal official or officer.*

"SECTION 6. The Board shall elect, annually, at its first meeting, a chairman and a secretary who shall keep minutes of all proceedings including the record of attendance of all members. The Board shall meet regularly at least two (2) times a month on such dates as their rules may provide and all meetings shall be open to the public.

"SECTION 7. Each member of the Board shall receive a salary of One Hundred Dollars ($100.00) per year, payable semi-annually. Each Board member is hereby required to attend all regular meetings of the Board and absence from three (3) consecutive regular meetings of the Board or absence greater than 20% of

all regular meetings in any calendar semi-annual period by any member *shall be grounds for removal from office under the same procedures and conditions as provided by law for removal of municipal officers.* The Secretary of the Board shall certify the record of any such absences." (Our emphasis).

■ Applying the criteria expressed in *Hyde,* we hold the members of the utility board are public officers. The utility board is a creature of state statute and municipal ordinance. It is endowed with powers, duties, and privileges which involve a portion of the sovereign power exercised for the benefit of the public for a specified term. The compensation of the members of the board is fixed by law. They receive their position by appointment after which they must execute an oath. They may be removed or impeached under the law applicable to municipal officers.

Consequently, interviews with prospective municipal officers do not fall within the exception for "interviews with prospective employees."

"Even though their intentions may be sincere, such boards and agencies should not be allowed to circumvent the plain provisions of the statute. The benefit to the public far outweighs the inconvenience of the board or agency. If the board or agency feels aggrieved, then the remedy lies in the halls of the Legislature and not in efforts to circumvent the plain provisions of the statute by devious ways in the hope that the judiciary will read some exception into the law."

*Canney,* 278 So.2d at 264. "Practicality, regardless of how desirable it may be, will not permit this Court to frustrate the expressed intent of the Legislature by adding new classifications to I.C. 5–14–1.5–6." *Citizens Action Coalition of Indiana, Inc. v. Public Service Commission,* (1981) Ind.App., 425 N.E.2d 178, 183. *See Gillis v. Schmidt,* (1976) 38 Colo.App. 233, 556 P.2d 82 (discussion of times when exceptions are read into the sunshine statutes).

II

Council argues the trial court committed an error of law in its finding no. 10 which reads:

"That the Plaintiffs need not allege or prove special damages different from that suffered by the Public at large, and the Court finds that a violation of the Indiana Open Door Act, as set out in Plaintiffs' Complaint, is sufficient evidence of damages suffered by the Public at large."

Record at 28.

It is Council's position, relying on the provisions of I.C. 34–1–10–2 (Burns Code Ed., 1973),[6] that Tribune must, in fact, establish

"[t]hat some 'great harm' will be suffered by the plaintiff or the general public if the injunction does not issue"

Appellants' Brief at 15. We disagree.

I.C. 5–14–1.5–7(a) provides:

"An action may be filed by any citizen of this state in any court of competent jurisdiction to enjoin continuing, threatened or future violations of this chapter. . . . The plaintiff in such suit need

6. "When it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation *would produce great injury to the plaintiff;* or, when, during the litigation, it appears that the defendant is doing, or threatens, or is about to do, or is procuring *or suffering some act to be done, in* violation of the plaintiff's rights, respecting the subject of the action, and tending to render the judgment ineffectual, or when such relief, or any part thereof, consists in restraining proceedings upon any final order or

judgment, an injunction may be granted to restrain such act or proceedings, until the further order of the court, which may, afterwards, be modified upon motion. And when it appears in the complaint at the commencement of the action, or during the pendency thereof, by affidavit, that the defendant threatens, or is about to remove or dispose of his property, with intent to defraud his creditors, *a temporary injunction may be granted,* to restrain the removal or disposition of his property."
I.C. 34–1–10–2 (Burns Code Ed., 1973). (Our emphasis).

not allege or prove special damage different from that suffered by the public at large."

■ In view of the express language of I.C. 5–14–1.5–7(a), the trial court correctly stated Tribune need not allege or prove special damage. In dispute, then, is the trial court's determination that a violation of the Indiana Open Door Act "damages" the public.

■ We agree with the trial court and hold a threatened violation of the Open Door Law constitutes a great public injury. Conduct that is unlawful or against the public interest constitutes "great injury" *per se. DeMayo v. State ex rel. Department of Natural Resources,* (1979) Ind.App., 394 N.E.2d 258, 261; *Rees v. Panhandle Pipeline Co.,* (1978) Ind.App., 377 N.E.2d 640. *Accord Mason,* 416 N.E.2d at 1316 n. 3.[7] *See also Town of Palm Beach,* 296 So.2d at 477; *Times Publishing Co.,* 222 So.2d at 476.

As aptly stated in *Times Publishing Co.,* 222 So.2d at 476:

"On the other hand, we cannot presume that the legislature employed useless language. So if the provision granting jurisdiction to the circuit courts to issue injunctions to enforce this act is to be given any legal effect, it must be said that it is the equivalent of a legislative declaration that a violation of the statutory mandate constitutes an irreparable public injury; and we are aware of no legal barrier to such a legislative proclamation concerning the subject matter of the act before us. The effect of such a declaration in a subsequent judicial proceeding, then, would be that one of the requisites for a writ of injunction need not be proven, i.e., an irreparable injury; and a mere showing that the statute has been or is clearly about to be violated fully satisfies such requirement."

The clear language of the Open Door Law evidences the legislative policy of this state that all meetings of governing bodies, with certain exceptions, are to be open to the public. Consequently, we conclude a threatened violation of the Open Door Law is both unlawful, *i.e.,* contrary to statute, and against the public interest.

### III

■ The third and final issue is whether the Tribune sustained its burden of proof by showing a threatened violation of the Open Door Law. Because we hold applicants for the utility board are not prospective employees, but, instead, are prospective officers, the proposed executive sessions were threatened violations of the Indiana Open Door Law. Council and Tribune agreed there would be a threatened violation if the scheduled meetings did not come within the exceptions for prospective employees.

The public would be harmed and a law broken if the executive sessions had not been enjoined. Therefore, an injunction was properly issued "to prevent at nonpublic meetings the crystallization of secret decisions to a point just short of ceremonial acceptance." *Town of Palm Beach,* 296 So.2d at 477. The public had the right to have the interviews open to public scrutiny as part of the entire deliberative process. *Miglionico,* 378 So.2d 677, 680. Tribune sustained its burden of proof and was properly granted the injunction against Council.

Judgment affirmed.

BUCHANAN, C. J., and SULLIVAN, J., concur.

---

7. These cases deal with preliminary, as opposed to permanent, injunctions. However, the distinction between preliminary and permanent injunctions is merely procedural, based upon the time of issuance. *Indiana & Michigan Electric Co. v. Whitley Co. R.E.M.C.,* (1974) 161 Ind.App. 492, 316 N.E.2d 584, 586.