**GARY COMMUNITY SCHOOL CORPORATION, Appellant–Plaintiff,**

v.

**SERVICE EMPLOYEES INTL., et al., Appellees–Defendants.**

No. 45A03–0503–CV–114.

Court of Appeals of Indiana.

Dec. 27, 2005.

Rehearing Denied March 6, 2006.

Gilbert King, Jr., Gary, for Appellant.

James Balanoff, Merrillville, for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

The Gary Community School Corporation (the "Gary Schools") appeals the trial court's order of a condition on the Gary Schools to contribute additional money to the Health and Insurance Trust Fund for service employees in connection with the grant of a temporary restraining order and preliminary injunction. The injunction enjoined the Service Employees International Union Local 73, AFL–CIO and its members, non-teacher employees of the Gary Schools, from striking. Because the injunction was solely enjoining an illegal strike, as the employees are public employees, the trial court abused its discretion in imposing the contribution condition on the Gary Schools. We therefore affirm in part and reverse in part.

### Facts and Procedural History

The collective bargaining agreements between the Gary Schools and the custodial and food service employees ("Employees"), represented by the Service Employees Union Local 73 ("Union"), expired on December 31, 2002. However, a provision in both agreements stipulated the extension of the terms until a new agreement was reached. Negotiations continued between the parties from the expiration of the agreements until new collective bargaining agreements (the "2004 Agreements") were signed in January 2004.

Before the 2004 Agreements were signed, the actuary, William Bork, who oversaw the Health and Insurance Trust Fund (the "Insurance Fund") that provides the medical insurance coverage for the Employees as well as others from the Gary Schools, sent a letter to the Gary Schools' Board of Trustees and the Union detailing the possible future insolvency of the Insurance Fund. In his September 3, 2003, letter, Bork projected that at the current contribution rates the Insurance Fund would be insolvent by the end of 2004. Appellant's App. p. 74. Bork also projected that the necessary breakeven hourly contribution rate to prevent insolvency would be $4.79 for Division A employees (includes the Gary Schools' food service employees) and $4.50 for Division C employees (includes the Gary Schools' custodians). *Id.*

The 2004 Agreements included wage increases as well as increases to the amount the Gary Schools would contribute to the Insurance Fund. Portions of the 2004 Agreements were retroactive to the beginning of 2003. The Gary Schools paid the retroactive difference in the wages and insurance as agreed to in the 2004 Agreements. The Gary Schools agreed to contribute $3.54 per hour for custodians and $2.43 per hour for food service employees to the Insurance Fund for 2004. Despite being informed of the rates required to keep the fund solvent, the Union and Employees agreed to lower contribution rates than recommended by Bork's letter. The wage and insurance provisions called for a reopening of negotiations to change these rates in January 2005.

On June 30, 2004, Bork sent another letter to the Gary Schools' Board of Trustees and the Union explaining that insolvency of the fund would likely occur in August 2004 at the current contribution rates. Appellant's App. p. 70. The new hourly amounts projected for the Insurance Fund to break even for 2004 were $3.81 for Division A and $4.49 for Division C. *Id.* at 71. Bork wrote that immediate action should be taken by the Board of Trustees of the Insurance Fund to avoid insolvency. *Id.* at 72.

Based on the likelihood of insolvency of the Insurance Fund, the Union attempted to open negotiations with the Gary Schools on the contribution rates needed to sustain the Employees' medical benefits. The parties did not reach an agreement. To preserve the solvency, on August 24, 2004, the trustees of the Insurance Fund were forced to drastically cut insurance benefits, including eliminating all benefits for dependents of the covered Employees starting on September 1, 2004. *Id.* at 30. In response to this drastic cut in benefits, the Employees went on strike on September 2, 2004.

In anticipation of the Employees' strike, on September 1, 2004, the Gary Schools filed an emergency petition for a temporary restraining order ("TRO") and a verified complaint also requesting a preliminary and permanent injunction to prevent the Employees from striking. The following day the trial court granted the Gary Schools' request for a TRO enjoining the Employees' strike. On September 7, the trial court entered its Findings of Fact and Conclusions of Law, and upon the agreement of the parties, the TRO was converted to a preliminary injunction. The trial court ordered the parties to negotiate to find a solution. In addition, the trial court placed a condition on the Gary Schools to contribute $4.50 per hour for custodians and $423.20 per month for food service employees[1] toward the Insurance Fund for thirty days to maintain dependent insurance coverage during negotiations.

On October 7, 2004, the Gary Schools filed a Motion to Modify Preliminary Injunction arguing that the condition of additional contribution should not be required. The trial court extended the preliminary injunction because negotiations still failed to resolve the dispute. The trial court later entered a Nunc Pro Tunc Order denying the motion to modify but later granted a motion to clarify filed by the Gary Schools. In respect to the motion to clarify, the trial court confirmed its order requiring the Gary Schools to pay the additional amounts to the Insurance Fund. The Gary Schools now appeal the trial court's ruling.

### Discussion and Decision

The Gary Schools appeal the trial court's imposition of the condition requiring Gary Schools to pay additional monies to the Insurance Fund. Among other arguments, the Gary Schools argue that the trial court abused its discretion in ordering the condition because the court's order changed the clear and unambiguous contract terms contained in the collective bargaining agreements.[2]

Under Indiana common law, public employees do not have the right to strike, and thus a public employee strike is illegal. *Anderson Fed'n of Teachers, Local 519 v. School City of Anderson,* 252 Ind. 558, 254 N.E.2d 329, 331 (1970) ("*Anderson II* "). The injunctive process may be used to prevent or halt a public employee strike. *Anderson Fed'n of Teachers, Local 519 v. School City of Anderson,* 252 Ind. 558, 251 N.E.2d 15, 16 (1969) ("*Anderson I* "), *clarified on reh'g by Anderson II.*[3]

---

**1.** The Gary Schools were also required to pay $423.20 per month for clerical employees.

**2.** The Gary Schools also argue that the trial court's condition violates Article III, Section 1 of the Indiana Constitution. In particular, they argue that this condition unconstitutionally directs the executive branch as to how they may appropriate funds. Because we reverse on other grounds, we need not reach this issue.

**3.** *Anderson II* cites *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), which originally announced this common law rule.

■ The grant or denial of an injunction lies within the trial court's sound discretion. The decision will not be overturned unless it was arbitrary or amounted to an abuse of discretion. *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 815 (Ind.Ct.App.2000). An abuse of discretion will be found if the ruling is clearly against the logic and effect of the facts and circumstances before the court or if the trial court has misinterpreted the law. *Hayworth v. Schilli Leasing, Inc.*, 669 N.E.2d 165, 167 (Ind.1996). We only consider the evidence that supports the trial court's decision along with all of the reasonable inferences from that evidence, and we will reverse only where the evidence leads to a conclusion directly opposite of that reached by the trial court. *Common Council of City of Peru v. Peru Daily Tribune, Inc.*, 440 N.E.2d 726, 728 (Ind.Ct. App.1982). We do not reweigh the evidence or judge the witnesses' credibility. *Id.* We do not substitute our judgment for that of the trial court even though the circumstances might justify a different result. *Id.*

■ The purpose of a preliminary injunction is to maintain the status quo pending adjudication of the underlying claim. *Paul v. I.S.I. Services, Inc.*, 726 N.E.2d 318, 321 (Ind.Ct.App.2000). Indiana Code § 34–26–1–9 gives a court ordering or continuing an injunction the ability to impose conditions or terms "upon the party obtaining the injunction that are considered equitable." This ability allows the court to preserve the status quo for both parties using conditions or terms when reasonably required under the circumstances. As this is a case of first impression reviewing a court's imposition of conditions in connection with a preliminary injunction, we adopt the abuse of discretion standard as applied to preliminary injunctions in reviewing such conditions.

■ The Gary Schools contend that the trial court abused its discretion by imposing the condition that required them to pay a higher amount to the Insurance Fund than it agreed to under the 2004 Agreements. Specifically, they argue that the condition demonstrates that the trial court intervened in a collective bargaining dispute and changed the clear and unambiguous contract terms. We agree with the Gary Schools that the trial court abused its discretion by imposing the condition although our reasoning differs from the Gary Schools' reasoning.

We begin by addressing the basis for the trial court's decision to issue the temporary restraining order and preliminary injunction prohibiting the Employees from striking. Our Supreme Court has previously held that it is illegal for public employees to strike. *Anderson I*, 251 N.E.2d at 16. In *Anderson I*, the Court addressed whether the anti-injunction statute,[4] which limits a court's ability to issue an injunction affecting a labor dispute, applied to the state government or any of its subdivisions. *Id.* The Court concluded that the act involved disputes between private employers and unions and was inapplicable to public employees. *Id.* As such, the Court held that a trial court could issue and enforce by contempt a TRO and preliminary injunction prohibiting public employees from striking. *Id.* The Court reasoned that to allow public employees to strike "must not be permitted if the order-

---

4. The Indiana Anti–Injunction Act is defined in Indiana Code ch. 22–6–1. This type of statute is commonly known as a "Little Norris–LaGuardia Act," because it is a state's version of the federal prohibition of courts interfering with labor disputes. The Anti–Injunction Act prohibits a court from issuing an injunction in a case based on a labor dispute unless one of the narrow exceptions defined in the statute is met.

ly function of our society is to be preserved." *Id.* at 18.

Our Supreme Court granted rehearing of *Anderson I. Anderson II,* 252 Ind. 558, 254 N.E.2d 329. Expanding on its reasoning in *Anderson II,* the Court described the anti-injunction statute as a "policy statute," which by its terms confined its applicability to the private sector. *Id.* at 331. Further, the court noted, "this status of the law which might permit any type of public strike can only be accomplished by express 'public policy' legislation so stating." *Id.* Since *Anderson II,* the Indiana General Assembly has not passed any legislation permitting public employees to strike. Consequently, public employees have no right to strike, and a court may use its injunction power to prohibit a strike.

Our Supreme Court opinions in *Anderson I* and *Anderson II* apply to all public employees regardless of their position. Justice DeBruler's dissenting position, that some public employee strikes would not appreciably disrupt the community, did not carry the day. *Anderson I,* 251 N.E.2d at 21. Presciently, Justice DeBruler asked, "What about janitors?" when making his point that certain public employees' strikes would not cause chaos to the community as a whole. *Id.* Nonetheless, in Indiana, absent legislative change, it is illegal for all public employees to strike.[5]

■ It is undisputed that the Employees are public employees. All work for the Gary Schools. A public school corporation is defined by statute as a state government subdivision. Indiana Code § 36–1–2–13 defines a political subdivision of the state as a municipal corporation or a special taxing district and Indiana Code § 36–1–2–10 includes a public school corporation in the definition of a municipal corporation. Hence, it was illegal for the Employees to strike, and the trial court did not abuse its discretion by issuing a TRO and preliminary injunction prohibiting the Employees from doing so.

However, the trial court did abuse its discretion in imposing the condition that the Gary Schools contribute a higher amount to the Insurance Fund than what was required by the 2004 Agreements. As we previously indicated, the purpose of a preliminary injunction is to maintain the status quo. And reasonable conditions may be placed on the party requesting the injunction—here the Gary Schools—in order to maintain the status quo and where reasonably required under the circumstances for the benefit of those enjoined— here the Employees. Here, the TRO and injunction were prohibiting illegal activity—the strike of public employees. As the injunction was enjoining the Employees from committing illegal activity, ordering the Gary Schools to contribute to the Insurance Fund for the benefit of the Employees was not reasonable.

■ We understand the trial court was attempting to preserve the status quo to protect the Employees from losing the benefits at issue during the negotiations and that a trial court has broad discretion in framing its decrees so that the relief conforms to the circumstances of each par-

---

5. Nevertheless, the trial court judge in this case found that the strike by the Employees interrupted the ability of the Gary Schools to provide educational services to children due to the absence of the Employees. The trial court found that their absence would cause an unsanitary environment, a safety hazard for children crossing the street without adult supervision, crippled communication between departments and districts, the inability of the schools to serve breakfast and lunch, and a hindering in the preparation for the ISTEP tests. Appellant's App. p. 31–32.

ticular case. However, that discretion is limited to relief based on issues raised. *Brademas v. Hartwig,* 175 Ind.App. 4, 369 N.E.2d 954, 958 (1977). The Gary Schools did not raise any other issues in filing its complaint, nor did the Employees file a counterclaim. As such, the only issue upon which the injunction can rest is whether the Employees had the right to strike. Thus, when issued, the injunction's sole purpose was to enjoin illegal activity.

We acknowledge the harsh effect of this ruling. With today's high cost of medical care, it is crippling for a family to lose insurance coverage for any of its members. We realize the trial court's goal in this difficult case was to reach a socially acceptable outcome. However, we are constrained by the rulings in the *Anderson* cases and the basic function of injunctions. If the Employees wish to hold the Gary Schools accountable for the loss of insurance, they must do so by filing a lawsuit or counterclaim based on contract law or fiduciary duty, if such a legal claim exists.

Affirmed in part and reversed in part.

SULLIVAN, J., and FRIEDLANDER, J., concur.