SIMS v. THE BOARD OF COMMISSIONERS OF MONROE COUNTY.

BOARD OF COUNTY COMMISSIONERS.—*Aid to Soldiers' Families.*—*Appeal.*—A., in March, 1869, filed her petition before the Board of Commissioners of Monroe County, alleging that she was the widow of a soldier who had served in the army of the United States from August, 1862, until the 26th day of June, 1865, when he was honorably discharged by reason of disability contracted in the service; that while in the service, he had a wife, the petitioner, and three children under twelve years of age; and that she was entitled to have and receive twelve month's pay at the rate of fourteen dollars per month, out of the fund collected in said county on the levy made under the act of March 4th, 1865, for the relief of families of soldiers, seamen, etc. The board of commissioners disallowed the claim, and the petitioner appealed to the court of common pleas, and by that court the appeal was dismissed.

*Held,* that as the later act of December 20th, 1865, in terms repealed the act of March 4th, 1865, and provided further, that all disbursements of the funds raised under the act repealed should cease on and after the 3d day of March, 1866, and as the claim of the petitioner was one to obtain a sum claimed to be due under the act of March, 1865, as modified by that of December, 1865, and as the claim was not made until long after the 3d of March, 1866, when disbursements were to cease, it was wholly within the discretion of the board of commissioners to allow it or not, and no appeal lay to any other court from the action of the board.

SAME.—*Case Overruled.*—Under the provisions of said act of December, 1865, none of the persons enumerated in the repealed act can claim, as a matter of right, any portion of the fund, since the 3d day of March, 1866. *Board of Commissioners of Clinton County* v. *McDowell,* 30 Ind. 87, overruled.

APPEAL.—*Board of Commissioners.*—There is no statute which authorizes an appeal from the action of the board of commissioners upon a matter involving no question of legal right, but simply a matter for the exercise of the discretion of the board.

APPEAL from the Monroe Common Pleas.

WORDEN, J.—This cause was once decided, but a rehearing was granted. The cause has been again submitted. After again considering the question involved, we are of opinion that the judgment below should be affirmed for the reasons stated in the opinion granting the rehearing, which is adopted as the opinion in the cause.

The judgment below is affirmed, with costs.

BUSKIRK, C. J., having been of counsel, was absent.

Sims *v.* The Board of Commissioners of Monroe County.

### ON PETITION FOR A REHEARING.

WORDEN, J.—On the 29th of March, 1869, the appellant filed her petition before the board of commissioners of said county, alleging that she was the widow of Robert Sims; that in the year 1865, there was levied and collected in Monroe county, under the act of March 4th, 1865, for the relief of the families of soldiers, seamen, marines, etc., the sum of fourteen thousand one hundred and sixty-six dollars and twenty-seven cents, of which the sum of two thousand five hundred and thirty-two dollars and eighty-seven cents was applied, under the provisions of the act for the relief of soldiers' families, leaving the sum of eleven thousand six hundred and thirty-three dollars and forty cents of the fund in the county treasury; that Robert Sims was mustered into the service of the United States as a private in Company B, 67th Regiment of Indiana volunteers, on the 19th of August, 1862, and that he continued in the service until the 26th of June, 1865, when he was honorably discharged by reason of disability contracted in the service; that he was not a commissioned officer during any part of the service; that he had, during the time of service, a wife and three children, being under the age of twelve years, who were dependent on him for support, and had not otherwise sufficient means for their comfortable support; that during said period, they were and still are residents of Washington township, in said county, and were duly enumerated in the enumeration taken in said township, under the provisions of said act, but were never paid anything thereunder; that they are entitled, under said act of 1865, to twelve months' pay, at the rate of fourteen dollars per month, making one hundred and sixty-eight dollars, for which they demand judgment.

The board of commissioners, after hearing and fully considering the claim, disallowed it, and the petitioner appealed to the court of common pleas, in which court the appeal was dismissed, and the appellant excepted.

Sims *v.* The Board of Commissioners of Monroe County.

The only question in this court is whether the appeal was correctly dismissed.

In order to the correct solution of this question, it is necessary to examine the ground on which the supposed claim of the appellant is based.

By the act for the relief of the families of soldiers, etc., approved March 4th, 1865 (Acts 1865, general session, p. 93), it was provided that a tax be levied and collected for each of the years 1865 and 1866 of three mills on the dollar valuation of all the taxable property of the State, and one dollar on each taxable poll, for the purpose of supporting soldiers' families and sick and wounded soldiers in hospitals.

This fund, when collected, was to be paid into the State treasury, and one hundred thousand dollars thereof for each year was to be expended, under the control and direction of the governor, for the relief of sick and wounded Indiana soldiers in hospitals. The residue of the fund was to be paid over to the several county treasurers at their semi-annual settlement with the State, according to an apportionment provided for. When thus paid into the county treasury, the fund was to be under the control of the commissioners for the purpose named in the act, who were to apportion the same to the several townships in the manner provided for, and was to be paid over, on the warrant of the county auditor, to the several township trustees, in equal monthly proportions, and was to be distributed by the several trustees for the relief of the families of non-commissioned officers, musicians, and privates in the service, who had not otherwise sufficient means for their comfortable support, such fact to be determined by the disbursing officer; but any applicant dissatisfied with his decision might refer the same to the board of commissioners, whose decision should be final. The money was to be disbursed as follows: To the wife or mother dependent on a soldier, eight dollars per month; to each child under the age of twelve years, two dollars per month; and if the child be motherless, four dollars per month, subject to abatement if the sum raised

should be insufficient to pay said amounts. The commissioners were authorized to borrow money for the purposes of the act, in anticipation of the reception of the money arising from the tax.

This is a brief statement of the act in question, without going into the details of the provisions for the accomplishment of the general purpose thereof.

On the 20th of December, 1865, an act was passed, the first section of which, in terms, repealed the act above specified. Acts Special Session 1865, p. 59. The residue of the latter act is as follows:

" Sec. 2. The taxes levied in pursuance of the provisions of the above entitled act, for the year 1865, shall be collected and retained in the several counties where the same was levied, under the control of the board of county commissioners, and by them applied in conformity with said act, as if the same were still in force, subject to the provisions herein recited.

" Sec. 3. On and after the third day of March, 1866, all disbursements from such funds to the persons in said act enumerated shall cease, and the unexpended balance of such levy for the year 1865 shall, when collected after the payment of such sums of money with interest thereon as may have been by the board of commissioners borrowed, in pursuance of the provisions of section twelve of the above entitled act, be held and retained in the treasuries of the several counties where the same was levied and collected, as other county revenue; and it shall be the duty of the boards of commissioners of the several counties to provide, in such manner as they shall deem best, in a liberal manner from said fund, or from the general fund of the county, for the necessary support of needy persons of the following classes, to wit:

" First. Non-commissioned officers and soldiers who have been or are now, or shall hereafter become disabled, by reason of wounds or diseases, incurred or contracted in the

line of duty, in the service of the State or of the United States, in the late war for the suppression of the rebellion.

"Second. The wives and children and mothers, who were dependent on such soldiers; the widows and children of all officers and soldiers who were killed, or died from wounds or disease done or contracted in the line of duty in such service, or who have since died, or who shall hereafter die from any of such causes. But in no case shall the beneficiaries of this act be included among the poor, provided for by the existing laws, nor shall they be sent to the county infirmaries provided for such.

"Sec. 4. The treasurers of the several counties shall pay over to the state treasurer five per cent. of all the taxes· levied and collected or to be collected under the provisions of said act for the year 1865, out of which five per cent. shall be paid any indebtedness incurred or created by the governor in anticipation of the one hundred thousand dollars appropriated by the second section of the above named act, for the year 1865, for the relief of sick and wounded Indiana soldiers in hospitals and the residue of the said five per cent. may be applied, under the direction of the governor, to the relief of sick, destitute, wounded or disabled Indiana soldiers, who have been honorably discharged and may need such assistance, and the amount and manner of such expenditure shall be reported by the governor to the next general assembly.

"Sec. 5. Nothing in this act shall be construed so as to prevent the boards of commissioners of any county from allowing to the families of soldiers the amount to which they are entitled by the provisions of the act hereby repealed for· the year 1865, in all cases where the same has not been allowed.

"Sec. 6. It is hereby declared that an emergency exists for the immediate taking effect of this act, and the same is therefore declared to be in force and effect from and after its passage."

It will be seen, by reference to the second section of the

act above set out, that the taxes levied for the year 1865 were, notwithstanding the repeal of the former law, to be collected, but instead of being paid into the state treasury, they were to be retained in the several county treasuries, and be under the control of the commissioners, and by them applied in conformity with the repealed act, as if the same were still in force, subject, however, to the provisions of the repealing act.

Among the essential provisions of the latter act are these: that all disbursements of the funds to the persons enumerated in the repealed act shall cease on and after the 3d. of March, 1866, and that the unexpended balance of such levy for the year 1865, after paying any sum with the interest thereon which the commissioners might have borrowed under the provisions of the repealed act, should be retained in the county treasuries as other county revenue.

We think that, under this provision, none of the persons enumerated in the repealed act can claim, as a matter of right, any portion of the fund in question after the time limited for the disbursement thereof, viz., the 3d of March, 1866, although the claim may be for time that elapsed previously to that date. The statute above quoted says, that "disbursements" from the fund shall cease on and after that day. Disbursement, according to the standard lexicons, is the act of paying out. If paying out is to cease on that day, by what right can a party claim that it shall be continued after that day, although he claims for time that elapsed before that day? That the legislature used the term "disbursements" in its ordinary sense, and as synonymous with paying out, is shown by the provision that the "unexpended balance" of the fund, after paying borrowed money and interest, should be retained in the county treasury as other county revenue. This "unexpended balance" must have reference to the balance unexpended at the time when the disbursements were to cease; and that balance was to be retained in the treasury of the county as other county funds. This is utterly inconsistent with the idea that the

persons enumerated in the repealed act have a legal right to claim the fund after that time.

The conclusion, that by the terms of the statute in question, the parties enumerated in the repealed act have not the right to claim any part of the fund after the time limited for the disbursement thereof, is placed beyond doubt by the fifth section, which provides, that "nothing in the act shall be so construed as to prevent the board of commissioners of any county from allowing to the families of soldiers the amount to which they are entitled by the provisions of the act repealed, for the year 1865, in all cases where the same has not been allowed." These provisions, taken altogether, amount to this, that the disbursements shall be obligatory upon the counties until March 3d, 1866, and no longer; but the board of commissioners of any county may, nevertheless, allow to the families of soldiers after that time, where it has not been allowed. It is entirely discretionary with the board, whether they will make such allowance after the time limited. They are authorized, but not required, to make such allowance.

The right of the persons enumerated in the repealed act, to the money, can in no sense be regarded as a vested right before the money is paid over to them. It does not depend upon contract, the obligation of which cannot be violated, but simply upon the bounty of the State, well bestowed upon the families of soldiers who were periling their lives in the service of the country. But this bounty might be given or withheld at any time by the State, at the pleasure of the legislature.

If the right to the money became a vested right before the persons enumerated received it, it must have been vested by the passage of the original law; and if that gave them such a vested right as could not be taken away, it follows that the repeal of the law is void, and the persons enumerated are yet entitled to the fund for both the years 1865 and 1866. We think it was clearly within the power of the legislature to provide that disbursements under the law

should cease at the time specified. This provision was in itself reasonable, as it gave the parties interested, who were entitled to monthly disbursements for their support, between two and three months after the passage of the law, in which to make application for the bounty of the State, which was intended to supply their daily wants and necessities.

The conclusion at which we have arrived, from an attentive examination of the statutes in question, is, that the persons enumerated in the repealed act are not entitled, as a matter of right, to any portion of the fund in question where they did not claim it within the time limited for the disbursement thereof, and that they cannot maintain an action therefor; but that the board of commissioners of the proper county may, in their discretion, allow it to them. We think also that, as the allowance by the board, or their refusal to allow the same, is a matter purely in the discretion of the board, no appeal lies to any other court from the exercise of such discretion.

We are aware that in the case of the *Board of Commissioners of Clinton County* v *McDowell*, 30 Ind. 87, it was held that the persons enumerated in the repealed act, though they had not claimed the benefit of the fund before the time limited for the disbursement thereof, were entitled to the benefit of the same, as a matter of right, for the time which elapsed before the disbursements were to cease, and that they could recover the same by suit.

We have not been able to bring our minds to the same conclusion, and however reluctant we may be to overrule former decisions of this court, a sense of duty impels us to give the statute in question the interpretation we have indicated.

As we have said, the allowance or disallowance of the claim was, as we think, a matter resting purely in the discretion of the commissioners, from which no appeal lies to any other tribunal.

There is yet another reason why, in our opinion, no appeal lies from the action of the board. We have seen that, up to

March 3d, 1866, the fund was to be applied in conformity with the original act, the same as if it were still in force, subject to the provisions of the repealing act.   One of the provisions of the original law was, that the money should be distributed for the relief of the families of non-commissioned officers, musicians, and privates in the service who had not otherwise sufficient means for their comfortable support, such fact to be determined by the disbursing officer; but any applicant dissatisfied with his decision might refer the same to the board of commissioners, whose decision should be final.   We see no good reason, under this law, why the decision of the board, as to whether a party applying for the benefit of the fund was entitled to it or not, should not be regarded as final.   This, however, is an incidental question, and we rest our decision on the ground mainly that the allowance or disallowance is a matter for the exercise of the discretion of the board of commissioners, from which no appeal lies.

Looking at the case from another stand-point, it may be observed that the act of December makes it the duty of the several boards of commissioners "to provide in such manner as they shall deem best, in a liberal manner from said fund, or from the general fund of the county, for the necessary support of needy persons" of the classes therein named.

Perhaps the petitioner is shown to be within one of the classes named in this statute, but the application is evidently not intended to obtain the relief thereby provided for.   The petition does not show that the petitioner or the children were "needy" at the time of the filing thereof.   It does not make a case for relief under the new provisions of the law of December, but in its whole scope and purpose is intended to enforce a supposed right under the previous law of March as modified by that of December.

As the case made is not one for relief under the new provisions of the law of December, we need not determine whether an appeal lies from the action of the board under

those new provisions.    We may say, however, that it would seem that the commissioners must be the exclusive judges of the manner and extent of the provision to be made for the classes named in the law.    Perhaps if the commissioncrs refuse to act under the law, a writ of mandate would lie to compel them to act; but when they have acted in the matter, and determined the manner and extent of the provision to be made, it is difficult to say that any court can, on appeal, disturb the action of the board.    We desire, however, to decide only what is in the record before us.

We hold that the case before us is one to obtain a sum claimed to be due under the act of March, as modified by that of December, 1865, and that as the claim was not made until long after the 3d of March, 1866, when disbursements under the law were to cease, it was wholly in the discretion of the board of commissioners to allow it or not, and that no appeal lies to any other court from the action of the board.    We have no statute which, in our opinion, should be construed to authorize an appeal from the action of the board of commissioners upon a matter involving no question of legal right, but simply a matter for the exercise of the discretion of the board.

In our opinion, the court below committed no error in dismissing the appeal; hence the petition for a rehearing is granted.

BUSKIRK, C. J., having been of counsel in the cause, was absent.

*J. F. Pittman, A. J. Simpson, J. T. Cox,* and *J. B. Mulky,* for appellant.

*S. H. Buskirk, J. W. Buskirk, G. A. Buskirk, J. S. S. Hunter,* and *M. M. Ray,* for appellee.