Cherie LINCOLN, Appellant
(Plaintiff Below),

v.

BOARD OF COMMISSIONERS OF
TIPPECANOE COUNTY, Appellee
(Respondent Below).

No. 79A04–8610–CV–315.

Court of Appeals of Indiana,
Fourth District.

July 22, 1987.

Ann G. Davis, Lafayette, for appellant.

James A. Gothard, Lawrence B. O'Connell, Lafayette, for appellee.

MILLER, Judge.

Cherie Lincoln appeals from the trial court's dismissal of her appeal of an executive decision of the Board of Commissioners of Tippecanoe County discharging her from her employment as a courthouse cus-

todian. The trial court dismissed Lincoln's appeal as not timely filed within the thirty day period specified by IND.CODE 36–2–2–27. Lincoln argues the Board's decision terminating her employment was judicial in nature and not ministerial, and therefore she has the right of appeal under I.C. 36–2–2–27. Lincoln next argues the statute, I.C. 36–2–2–27, is unconstitutionally vague, and that Trial Rules 6(A) and 6(E) should be applied to determine when the statute of limitations begins and ends. Lincoln also argues that the Board's decision was made when she received notice and that her appeal was timely filed. Finally, Lincoln claims notice sent by ordinary mail constitutes a denial of due process so the notice provided was inadequate as a matter of law.

We find the Board's decision was quasi-judicial in nature and therefore Lincoln has the right to appeal under I.C. 36–2–2–27. Because I.C. 36–2–2–27 does not specify the method of computing the thirty day statute of limitations, we find Trial Rules 6(A) and 6(E) apply and the statute is not therefore unconstitutionally vague. We hold "the date the executive decision was made" is the date on which the Board posted notice to Lincoln, November 25, 1986. We conclude under Trial Rule 6(A) and 6(E) Lincoln's appeal was timely filed and that notice by ordinary mail was adequate here.

We reverse and remand with instructions to reinstate Lincoln's appeal of the executive decision of the Tippecanoe County Board of Commissioners.

## FACTS

Cherie Lincoln began working as a courthouse custodian for the Board of Commissioners of Tippecanoe County in May, 1984. Lincoln was discharged on October 9, 1985 and initiated the grievance procedure pursuant to the Personnel Policy Manual adopted by the Board.[1] Lincoln claims al-

---

1. That procedure consists of five steps as follows:

"SECTION B—OFFICIAL COMPLAINT, GRIEVANCE, AND APPEALS PROCEDURE

Step 1. The employee will discuss the situation verbally with the Department Head. The employee will do this within three (3) working days after becoming aware of the situation. The Department Head must respond to the employee within three (3) working days. If the situation is not resolved to the employee's satisfaction he/she may appeal to the next step within three (3) working days.

Step 2. The employee must submit in writing (on an official Complaint, Grievance, and Appeals form supplied by the Personnel Department) a detailed account of the circumstances, the specific complaint and remedy sought to the Department Head. The employee will also provide a copy of the formal complaint to the Personnel Director at the beginning of step two. The Department Head will discuss the issue with the complainant and with other interested parties as he/she deems appropriate. The Department Head will provide the employee with a written decision within five (5) working days of receiving the complaint form. If the situation is not resolved to the employee's satisfaction he/she may appeal to the next step within three (3) working days.

Step 3. The employee must advise the Personnel Director in writing, and within the established time limit, that he/she wishes to have the Personnel Director review the complaint and appeal. The Personnel Director will hold an informal meeting with the Department Head and the employee to discuss the situation and the possible solutions to the complaint. Both the Department Head and the employee will be consulted and advised in writing of the time and place for this informal meeting. The informal meeting will be held within five (5) working days of the date the Personnel Director is notified to begin step three. Although the Personnel Director cannot enforce any decisions, a compromise will be attempted. If the employee is not satisfied with the outcome of this informal meeting he/she may appeal to the next step within three (3) working days of the informal meeting.

Step 4. The Personnel Director, upon official receipt of an appeal to step 4, shall convene an impartial panel to hear the grievance and appeal. This panel shall consist of three members: the County Auditor, the Administrative Assistant to the Board of Commissioners, and one other County official who is acceptable to the employee, the Administrative Assistant and the County Auditor. This other official shall be either an Elected Official, First Deputy, Department Head, or be a County employee with supervisory authority. In order for the Panel to issue an opinion at least two members must be present for the hearing. The Panel will hold a formal hearing and issue an advisory corrective action to the situation being appealed within twenty (20) working days of the receipt of the formal appeal. If either the employee or the Department Head is not satisfied with the recommendation of the Panel, they may file an appeal to the Board of Commissioners within three (3) working days of the decision of the Panel.

though her superiors had been critical of both the quality and the quantity of her work earlier in her tenure, she was not provided with a written warning prior to her dismissal as required by the Tippecanoe County Code. Lincoln also claims that although she followed all of the requirements for the five step grievance procedure in a timely fashion, the Board failed to (1) provide a face to face meeting between Lincoln and her Department Head as required by Step 3 of the grievance procedure, and (2) admit Lincoln's mother and sister to the formal hearing as required by Step 5 of the grievance procedure. See footnote 1. Lincoln apparently claims the Board failed to follow its own grievance procedure.

The formal hearing required by Step 5 of the grievance procedure was scheduled for and held on November 21, 1985. On November 25, 1985 both parties agreed that the Board wrote, dated, and posted in the ordinary mail its decision to affirm Lincoln's discharge in a letter [2] notifying Lincoln of its decision. The parties also agree that Lincoln received the Board's November 25, 1985 letter on November 27, 1985.

Lincoln filed her appeal of executive decision in the Tippecanoe Circuit Court, together with the required bond for payment of costs, on December 27, 1985. On June 4, 1986, the Board filed a Motion to Dismiss on grounds that the appeal of the executive decision had not been filed within thirty days of October 9, 1985, the date Lincoln was discharged. A hearing was held on the Board's motion to Dismiss on July 1, 1986. The trial court denied Lincoln's Appeal of Executive Decision and granted the Board's Motion to Dismiss on July 16, 1986. Lincoln now appeals.

### Issues

Lincoln presents five issues, restated, for consideration on appeal:

I. Whether the decision of the Board of Commissioners of Tippecanoe County terminating Lincoln's employment was quasi-judicial in nature, and therefore appealable to the Circuit Court under I.C. 36–2–2–27.

II. Whether I.C. 36–2–2–27 is unconstitutionally vague because the aggrieved party has no method of ascertaining precisely when the thirty day period of limitations specified by the statute begins to run and ends.

III. Whether the trial court erred in granting the Board's Motion to Dismiss because Lincoln's Appeal of Executive Decision was timely filed.

IV. Whether notice of the executive decision provided to Lincoln by ordinary mail constitutes a denial of due process.

### DISCUSSION and DECISION

I. *Board Acting in Quasi-Judicial Capacity*

Lincoln argues the final decision affirming her discharge made by the Tippecanoe County Board of Commissioners is quasi-judicial in nature and therefore she is entitled

---

Step 5. The employee must submit a formal appeal notice in writing to the Board of County Commissioners within three (3) working days. The Board will hold a formal hearing of the situation and may request that all parties be present. The employee may have counsel or other parties present if they will provide assistance in some manner to the employee. After discussion and review of all facts, the Board will make a decision and issue a written finding to the employee, the Department Head, and to the Personnel Office within twenty (20) working days of officially receiving the appeal. If the employee is not satisfied with the decision of the Board, he/she may file an appeal with any appropriate outside agency." (Record pp. 51–52; 154–155).

2. We note that although the record of proceedings contains a copy of materials in Lincoln's personnel file, the November 25, 1985 letter is not included with these materials. In addition, the transcript of the hearing on the Board's motion to dismiss refers to the November 25, 1985 letter as Exhibit 2 (Record p. 74–75), but neither Exhibits 1 or 2 are included anywhere in the record. Our Rules of Appellate Procedure provide a mechanism whereby this court may correct a material omission of the record. Rules of App.Proc. 7.2(C). However, here the parties agreed, at both the hearing on the motion to dismiss (Record p. 75) and in their respective appellate briefs, that the Board's letter was written, dated, and posted by ordinary mail on November 25, 1985. We therefore find the omission of the letter from the record of proceedings is not material to our decision and it is unnecessary to certify and transmit an order to provide the letter in a supplemental record.

to appeal the Board's determination, under I.C. 36-2-2-27, to the Circuit Court. The Board responds that the "decision to terminate or not to terminate an employee by the employer could not possibly be determined a judicial function, but rather must be one of administration in the performance of the job description and duties of the particular employee." Appellee's Brief p. 18. The Board relies on three cases for support; *Neswick v. Board of Commissioners of Newton County* (1981), Ind. App., 426 N.E.2d 50; *Hyde v. Board of Commissioners of Wells County* (1936), 209 Ind. 245, 198 N.E. 333; and *Potts v. Bennett* (1895), 140 Ind. 71, 39 N.E. 518. These three cases demonstrate that the rule in Indiana is well-settled: Only "judicial decisions" of the county board of commissioners may be appealed to the circuit court. Any act which is administrative, ministerial, discretionary, or legislative in nature is not reviewable.[3]

The threshold question is whether the Board's acts in this case are judicial. Only

---

3. In *Neswick, supra,* a property owner brought a declaratory judgment action to find a zoning ordinace illegal, ultra vires, unconstitutional and inequitable. The trial court dismissed the cause for lack of subject matter jurisdiction. This court found the trial court had subject matter jurisdiction to review the board's actions, which were legislative in passing an amendment to a zoning ordinance. Normally, review would not be available to legislative decisions under I.C. 17-1-14-24, but because the ordinance was challenged as unconstitutional, judicial review was available.

In *Hyde, supra,* the county highway superintendent was held to have the right to appeal under a predecessor our current statute, § 8506 (Burns Ann.St.1926), the Board of Commissioners' decision to remove him from office because he was a public officer and the Board's actions in charging, conducting a formal hearing, and removing Hyde from office were judicial actions. The Tippecanoe County Board here relies upon the following dicta language in *Hyde:*

"A distinction must be made between the removal of a public officer and a mere employee, such as a teacher, policeman, or fireman. It is generally held that, in removing its employees, the board that employees them acts ministerially, even where they are removable for cause, and upon hearing."

*Hyde, supra,* 198 N.E. at 338.
Our Supreme Court cited no cases or other authority for this proposition.

We note that a case decided by the supreme court shortly after *Hyde* appears to contradict the above dicta in *Hyde.* In *City of Elkhart v. Minser* (1937), 211 Ind. 20, 5 N.E.2d 501, Minser was a fireman employed by the City of Elkhart until December 3, 1935 when he was suspended for violation of a fire department rule which prohibited the wife of a fireman from engaging in any employment. Minser's wife was employed as the director of personnel and office manager at a dress factory. On December 17, 1935, the City Board of Public Works held a hearing and discharged Minser. On January 8, 1936 Minser filed a complaint against the City Board in circuit court, alleging the City Board's actions were arbitrary, capricious, in bad faith and a gross abuse of the Board's discretion, and asking the court to order the Board to reinstate him. Minser's cause was brought under Chapter 282 Acts 1935 which provides for a hearing before the Board of Public Works and Safety and also provides the right of appeal of the Board's decision to the circuit or superior court within thirty days. The trial court entered judgment for Minser and issued a mandatory injunction directing his reinstatement. The City appealed and Minser asked the Supreme Court to dismiss the appeal because the statute in question provided that the final judgment of the circuit or superior court shall be binding upon all parties and no further appeal shall be allowed. The supreme court stated "no reason appears why the losing party may not appeal to this court from such judgment," and found the statute was not in conflict with the separation of power's article of our state construction, nor did the statute confer administrative powers upon the court. The supreme court concluded the statute provided fireman and policemen a right to appeal discharge and affirmed the trial court's judgment.

Neither the City nor Lincoln have directed our attention to any cases or other authority which holds that the Board's discharge of an employee for cause after a formal evidentiary hearing is not a judicial act. Our search has found no support for this proposition.

In *Potts v. Bennett, supra,* an appeal did not lie from a Board of Commissioners' order to enter into insurance contracts for the courthouse, jail, and boilerhouse and to pay the premiums to several local insurance companies under Rev.St.1894, § 7858 which provided for appeal from all "decisions" of the county commissioners for "allowances". Our supreme court stated:

"It has become thoroughly settled in this court that the board of commissioners are clothed by statute with administrative or ministerial powers, and also with judicial powers. When they exercise administrative or ministerial functions, they do not act as a court, but in their capacity as a corporation. When they exercise judicial functions, then they act as a court, and exercise judicial functions, that an appeal lies from their decisions." (citations omitted).

*Potts, supra,* 39 N.E. at 519.

three recent cases address this issue and all three clearly involve the same kind of legislative actions by a county board of commissioners. In *Neswick v. Board of Commissioners of Newton County, supra,* the Fourth District found the passing of an amendatory zoning ordinance is a legislative function of the county board of commissioners and thus no appeal lies under I.C. 17–1–14–26 (1976 Ed.) which authorized appeals from "all decisions" of the county board, the previous version of I.C. 36–2–2–27, unless the zoning ordinance was challenged as exceeding the board's authority, illegal or unconstitutional. In *Bryant v. Lake County Trust Company* (1975), 166 Ind.App. 92, 334 N.E.2d 730, *trans. denied,* Judge Hoffman writing for the Third District, held that the enactment of amendatory zoning ordinance is a legislative function of the board of county commissioners and no appeal lies from such board action under I.C. 17–1–14–24 (1971). In *Christy v. Board of County Commissioners of Porter County* (1973), 156 Ind.App. 268, 295 N.E.2d 849, the Third District found the passage of a rezoning ordinance by the

board of county commissioners was a legislative act and not subject to judicial review. While all of these cases state the rule that the right of appeal under the predecessor of our current statute lies only from "judicial decisions", none of these case define a "judicial decision". Other cases discussing what constitutes a judicial act by a county board of commissioners date back to the early years of this century and before, and consequently offer little guidance as to what appears to have been arbitrary labeling.[4]

In a more recent case decided under I.C. 36–2–2–29, *Pastrick v. Geneva Township of Jennings County* (1985), Ind.App., 474 N.E.2d 1018, Judge Neal was not presented with the question of whether the county board's action in reviewing the denial of assistance to a poor-relief applicant by the township trustee was "judicial in nature". Rather, the township argued the applicant should have filed a petition for mandate and the First District found the trial court had jurisdiction under I.C. 36–2–2–29 to hear the applicant's complaint appealing

The Court concluded:
"The power exercised in the case before us in entering into the insurance contracts was purely ministerial or administrative in its character, and the board, in exercising it, acted in their capacity as a corporation, and not as a court, their act being that of the county in its corporate capacity. So long as they acted in good faith, and within the powers conferred on them by the statute, their acts cannot be brought in question by appeal."
*Potts, supra,* 39 N.E. at 520.

4. *See, e.g., Hyde, supra; Hastings v. Board of Commissioners of Monroe County* (1933), 205 Ind. 687, 188 N.E. 207 (action of board in removing county highway superintendent on statutory grounds after charges and hearing held judicial act and therefore appealable to circuit court); *Gannon v. State* (1924), 195 Ind. 596, 145 N.E. 283 (declaring results of an election on whether a county seat should be moved a judicial decision); *Starry v. Board of Commissioners of Warren County* (1894), 136 Ind. 207, 35 N.E. 1100 (settlement with township officers a ministerial act); *Potts v. Bennett* (1894), 140 Ind. 71, 39 N.E. 518 (obtaining insurance policy on county property an administrative or ministerial function, but allowance or disallowance of claim against county a judicial action); *Board of Commissioners of Vigo County v. Davis* (1893), 136 Ind. 503, 36 N.E. 141 (setting of judicial salaries is discretionary decision); *Dayton Grav-*

*el Road Co. v. Board of Commissioners of Tippecanoe County* (1891), 131 Ind. 584, 31 N.E. 363 (decision not to purchase a privately owned gravel road a judicial decision); *Farley v. Board of Commissioners of Hamilton County* (1891), 126 Ind. 468, 26 N.E. 174 (board action directing what kind of animals shall be allowed to run at large on unenclosed or public commons is administrative, not judicial); *Bunnell v. Board of Commissioners of White County* (1890) 124 Ind. 1, 24 N.E. 370 (making settlements with township trustee an administrative or ministerial function); *Platter v. Board of Commissioners of Elkhart County* (1885), 103 Ind. 360, 2 N.E. 544 (selling county property a ministerial act); *Sims v. Board of Commissioners of Monroe County* (1872), 39 Ind. 40 (denial of civil war benefits solely within the discretion of county commissioners and not a judicial decision; *Grusenmeyer v. City of Logansport* (1881), 76 Ind. 549 (where board has no discretion to grant or refuse an application if proper preliminary steps have been taken, the decision is judicial and appealable; *Hall v. Kincaid* (1917), 64 Ind. App. 103, 115 N.E. 361 (proceedings to move county seat to new location is ministerial act); *Kraus v. Board of Commissioners of Miami County* (1907), 39 Ind.App. 624, 80 N.E. 544 (contracting with architect to prepare plans for county courthouse and with builder to supervise construction of courthouse is administrative act).

the unfavorable decision of the board of county commissioners on her application for assistance in paying her electric bill. The Board of Commissioner's review of the trustee's decision to deny poor relief to an individual applicant was accepted by the court and the parties as "judicial in nature".

The term "quasi-judicial" or "judicial in nature" is used by our sister jurisdictions to designate a judicial function and to indicate that it is being exercised by a person other than a judge. 1 Am.Jr.2d *Administrative Law* § 161; 35A *Words and Phrases*, Quasi-Judicial. The authority of an administrative agency to act in a judicial way is explained as follows:

"The power to hear and determine, or to ascertain facts decide by the application of rules of law to the ascertained facts, is undoubtedly a part of the judicial power or a judicial function, but this power is not peculiar to the judicial office. It appertains as well to the other departments of the government as to the judiciary. Administrative agencies may hear and determine, or ascertain facts and decide by the application of rules of law to the ascertained facts, and even determine the facts upon which their jurisdiction depends, and the power exercised by them is not judicial in the sense of a violation of the principle of separation of powers, but is administrative or quasi-judicial. Particularly is it classified as quasi-judicial for procedural purposes. The power of administrative and executive officers to hear and determine many matters more or less directly affecting public or private rights, not being in the nature of a suit or of an action between

parties, is not the exercise of judicial power within the meaning of the constitution. Congress and the state legislatures have long delegated to executive officers or administrative agencies the determination of complicated questions of fact and of law, and the courts recognize that determination of such questions may validly be vested in administrative agencies although otherwise determination of such questions would be the function of the courts."

1 Am.Jr. *Administrative Law* § 168.

While it is difficult, if not impossible, to define quasi-judicial power and to discriminate between judicial and administrative acts in a way which will be applicable to every case,[5] we find it is the nature, quality, and purpose of the act performed, rather than the name or character of the officer or board which performs it, which determines its character as judicial. Generally, the judicial function consists of: (1) the presence of the parties upon notice; (2) the ascertainment of facts; (3) the determination of the issues; and, (4) the rendition of a judgment or final order regarding the parties' rights, duties, or liabilities. 1 Am. Jur.2d *Administrative Law* § 160.

■ Here, the Board of Commissioners, pursuant to Step 5 of its Personnel Manual Grievance Procedure, provided notice to the parties, permitted the parties to be represented by counsel, convened a formal hearing, took evidence, judged the credibility of the witnesses and weighed the evidence, and then made a decision to affirm the administrator's decision to discharge an employee. Lincoln's right to challenge her discharge on its merits was adjudicated[6]

5. A judicial act is defined as an "adjudication upon rights of parties who in general appear or are brought before tribunal by notice of process, and upon whose claims some decision or judgment is rendered." *BLACK'S LAW DICTIONARY* (5th ed. 1979). In contrast, a ministerial act is "one which a person or board performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority without regard to or the exercise of his own judgment upon the propriety of the act being done." *BLACK'S LAW DICTIONARY* (5th ed. 1979). An administrative act is defined as those "which are necessary to be done to carry out

legislative policies and purposes already declared by the legislative body." *BLACK'S LAW DICTIONARY* (5th ed. 1979).

6. The Federal Administrative Procedure Act, 5 U.S.C. § 701(a), defines two kinds of administrative activities; 1) rulemaking which is legislative in nature, and 2) adjudication, which is judicial in nature. Rulemaking is the agency process for the formulation, amendment, or repeal of a rule which applies generally in the future to many persons. Adjudication is the agency process for the formulation of an order, which affects the legal rights, duties of privi-

by the Board, and a decision was rendered against her. We conclude the Board was acting in a quasi-judicial capacity and therefore I.C. 36–2–2–27 provides Lincoln the right of appeal of the Board's decision to the circuit court.

## II. *Statute of Limitations*

Lincoln maintains that I.C. 36–2–2–27 is unconstitutionally vague because the aggrieved party has no method of ascertaining when the Board has "made its decision" and therefore of ascertaining precisely when the thirty day statute of limitations begins to run and ends. The Board claims the statute is clear on its face and "thirty (30) days" means "thirty (30) calendar days."

### A. TRIAL RULES APPLY TO COMPUTE TIME

I.C. 36–2–2–27 provides:

"(a) A party to a proceeding before the executive who is aggrieved by a decision of the executive may appeal that decision to the circuit court for the county.

(c) An appeal under this section must be taken within thirty (30) days after the executive makes the decision by which the appellant is aggrieved."

This statute is silent as to the method of computing when the thirty (30) day statute of limitations begins to run and ends. The threshold question, then, is how to compute the time. Lincoln argues the Indiana Rules of Trial Procedure should be applied. Trial Rule 6(A) and 6(E) provide:

### "TRIAL RULE 6. TIME

(A) Computation. In computing any period of time prescribed or allowed by these rules, by order of the court, or by any applicable statute, the day of the act, event, or default from which the desig-

nated period of time begins to run shall not be included. The last day of the period so computed is to be included unless it is:

(1) a Saturday,

(2) a Sunday,

(3) a legal holiday as defined by statute statute, or

(4) a day the office in which the act is to be done is closed during regular business hours.

In any event, the period runs until the end of the next day that is not a Saturday, a Sunday, a legal holiday, or a day on which the office is closed. When the period of time allowed is less than seven [7] days, intermediate Saturdays, Sundays, legal holidays, and days on which the office is closed shall be excluded from the computations ...

(E) Additional Time After Service by Mail. Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice of paper is served upon him by mail, three [3] days shall be added to the prescribed period."

Our supreme court resolved this question in *Ball Stores, Inc. v. State Board of Tax Commissioners* (1974), 262 Ind. 386, 316 N.E.2d 674. There, the statute at issue, I.C. 6–1–31–4 (Burns 1971), which provided for judicial appeal from the final administrative determination of petitioner's property tax assessment by the State Board of Tax Commissioners, specified that the time in which to file an appeal commences at the time of mailing of notice to the aggrieved party, but the statute was silent as to the method of computing the time for filing an appeal and giving notice to the Board. Our supreme court applied Trial Rule 6(A), conceding that the legislature may specify a

leges of particular parties in a particular case and which terminates the proceedings before the agency.

Indiana's administrative law statutes establish the same dichotomy. The Administrative Adjudication Act, I.C. 4–22–1–1 et seq., provides for judicial review under subsection 16 and defines "administrative adjudication" as "the administrative investigation, hearing, and determination

of any agency of issues or cases applicable to particular persons, excluding, however, the adoption of rules and regulations ..." The Administrative Rules and Regulations, I.C. 4–22–2–1 et seq., prescribe the agency process for rulemaking and does not provide for judicial review of this action which is legislative in nature.

method of computing a statute of limitations, but finding where the legislature has remained silent, the Trial Rules apply.

"In *Clary v. National Friction Products, Inc.* (1972) [259] Ind. [581], 290 N.E.2d 53, this Court stated:

'* * * The rules of trial procedure, which, as stated in Trial Rule 1, govern the procedure and practice in all courts of the state of Indiana are not applicable to proceedings before the administrative agencies nor to the proceedings requisite to invoking the jurisdiction of reviewing judical authority.' 290 N.E.2d at 55.

Such language seemingly could be broadly construed as answering the instant question. However, in *Clary*, there was a conflict concerning whether the statutory procedure governing an appeal from the Industrial Board was to be followed or whether the procedure relating to appeals from trial courts was to be followed. This Court's holding was that when such a conflict occurs, the statutory procedure prevails. However, the present case does not involve such a conflict. Instead, the statute is silent as to the method of computing the time for filing an appeal and giving notice to the Board. Trial Rule 6(A) provides the method for computing the thirty day time span when the thirtieth day falls on a Saturday, Sunday or holiday. . . .

The harsh result due to the Tax Board's interpretation is clearly repugnant to the legislative intent that the taxpayer have thirty days to deliver statutory notice. To require a notice of appeal be actually received by the Board on a Saturday, Sunday or holiday, then we should require the Board to remain open on such days—a result which this Court is certain would not be welcomed by the Board. Therefore, we hold that when the final day of the statutory time is Saturday, Sunday or a holiday, then such time is extended to the next day the office is open for business."

*Ball Stores, supra,* 316 N.E.2d at 677–78.

Our supreme court also noted that Trial Rule 6(A) of the Indiana Rules of Trial Procedure is based upon Rule 6(a) of the Federal Rules of Civil Procedure.

"In reviewing federal court decisions under Rule 6(a) of the Federal Rules of Civil Procedure, we find that the federal courts have applied Rule 6(a) to extend the time for filing appeals from federal administrative agencies where the final day for filing falls on a Saturday, Sunday or legal holiday. *Johnson v. Flemming*, (C.A.Wyo. 10 Cir.1959), 264 F.2d 322; *Dayton Power and Light Co. v. Federal Power Commission* (1958), 102 U.S.App. D.C. 164, 251 F.2d 875; *Simon v. C.I.R.*, (C.A.2, 1949) 176 F.2d 230."

*Ball Stores, supra,* 316 N.E.2d at 677.

In *City of South Bend v. Users of Sewage Disposal* (1980), Ind.App., 402 N.E.2d 1267, the court of appeals relied on *Ball Stores* to find that Trial Rule 6(A) applied to prescribe the method of computing the thirty (30) day period in which aggrieved party, pursuant to I.C. 19–3–11.5–8 and I.C. 19–2–5.5–8, may file an appeal and file notice of intent to appeal with the Public Service Commission. Neither the applicable statutes nor the rules of the Public Service Commission prescribed a manner for computing the thirty (30) day time period, so PSC decided the issue by relying on Trial Rule 6(A) and this Court upheld that decision. *See also, Jenkins v. Yoder* (1975), 163 Ind.App. 377, 324 N.E.2d 520 (where statute of limitations on personal injury actions was silent as to how the time limitation therein was to be computed, Trial Rule 6(A) pertaining to computation of time was applicable).

■ We conclude that since the statute at issue is silent as to the method of computing when the thirty (30) day statute of limitations begins to run and ends, Trial Rule 6 applies.

## B. DATE DECISION MADE

However, before we can apply Trial Rule 6 to the facts of this case, we must interpret the statute's language "after the executive makes the decision by which the appellant is aggrieved" to determine when the thirty (30) day period commences. I.C. 36–2–2–27(c). The Board argued in its mo-

tion to dismiss that the decision to discharge Lincoln was made on October 9, 1985 when Lincoln was discharged by her immediate supervisor. On appeal, the Board apparently concedes the decision was made on November 25, 1985 when the Board wrote, dated, and posted the letter to Lincoln affirming her dismissal after formal hearing. Appellant's brief, p. 10. Lincoln argues alternately the decision was made when the Board posted notice to her or when she received the Board's notice.

I.C. 36-2-2-27 is silent concerning notice from the executive to the aggrieved party of the executive decision. However, the due process clause clearly requires that notice and an opportunity to be heard be provided to the aggrieved party. *See, Mulane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865; *Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180; *Holland v. King* (1986), Ind.App., 500 N.E.2d 1229. In matters of statutory construction, our courts will adopt an interpretation of a statute that renders it constitutional and fully implements its provisions. *Willis v. State* (1986), Ind.App., 492 N.E.2d 45. We hold here that the "date the executive decision was made" pursuant to I.C. 36-2-2-27 is the date the Board posted notice of its final decision to Lincoln, November 25, 1985.

### III. *Appeal Timely Filed*

Lincoln argues her appeal was timely filed on Friday December 27, 1985. We agree. The Board made its decision when notice so informing the aggrieved party was posted, November 25, 1985. The thirty day statute of limitations period commenced on November 26, 1985. The thirtieth day was Wednesday December 25, 1985, a legal holiday and a day on which the court was closed. Trial Rule 6(A) extends the time for filing to the next day the court is open for business when the last day for filing falls upon a Saturday, Sunday, legal holiday, or day in which the

office is closed. Under Trial Rule 6(A), the final day for Lincoln to file was Thursday December 26, 1985.[7] However, Trial Rule 6(E) provides for three additional days to be added to the prescribed period where notice of the right is served upon the aggrieved party by mail. It is undisputed here that notice of the Board's final determination against Lincoln was sent through ordinary mail, posted on November 25, 1985 and received on November 27, 1985. Trial Rule 6(E) extends Lincoln's time for filing from Wednesday December 25, 1985 to Saturday December 28, 1985. Because the final day falls on a Saturday, Lincoln could have filed on the next business day, Monday December 30, 1985. We conclude Lincoln's appeal, submitted on Friday December 27, 1985, was timely filed.

### IV. *Constitutionality of Notice*

Lincoln argues due process requires notice be given by certified mail. The Board correctly argues that notice of its decision sent to Lincoln by ordinary first class mail is sufficient. Our court has recently addressed this issue twice. In *Carter Industrial Services v. Review Board* (1982), Ind.App. 429 N.E.2d 677, our Third District stated:

> The employer asserts that due process was violated because the board sent notice of the May 5 hearing by ordinary first class mail. It asserts certified mail should be required. We cannot agree. Here the record showed that notice to the employer was timely sent. The employer's claim is clearly within the issue resolved by the Fourth District in *Osborn v. Rev. Bd.* (1978), [178] Ind.App. [22], 381 N.E.2d 495. We adhere to the holding in *Osborn* and conclude there was no denial of due process.

*Carter, supra,* 429 N.E.2d at 679.

Judge Young, writing for our Fourth District discussed and resolved this question in *Osborn v. Review Board* (1978), 178 Ind.App. 22, 381 N.E.2d 495:

---

7. At the hearing on the motion to dismiss, Judge Ronald E. Melichar stated that the Tippecanoe Circuit Court was open for business on Thursday, December 26 and Friday, December 27, 1985. (Record, p. 90)

"Whether or not due process is afforded depends not on the particular hardship which may befall a person under exceptional circumstances. The issue, rather, is whether 'this system of jurisprudence, with its provisions for safeguarding the rights of litigants, is due process of law.' *Miedreich v. Lauenstein* (1914), 232 U.S. 236, 246, 34 S.Ct. 309, 312, 58 L.Ed. 584. The Due Process Clause does not require the state to erect an ideal system for the administration of justice which is impervious to malfunctions. Consequently, the failure in fact of a person to receive notice does not necessarily indicate a deprivation of due process. *Miedreich v. Lauenstein, supra; see United States v. Smith* (1968), 3d Cir., 398 F.2d 173 (service by regular mail may be sufficient due process even though addressee claims non-receipt).

In the case at hand, the statutory scheme provided that notice of the hearing be sent to Osborn. The administrative agency did in fact send notice and we may presume that in the regular course of mail such notice would be received by Osborn. This 'system of jurisprudence' meets the requirements of due process and Osborn cannot complain of any denial thereof. *Miedreich v. Lauenstein; United States v. Smith, supra.*" *Osborn, supra,* 381 N.E.2d at 500.

We believe this question is controlled by *Smith* and *Osborn* which have held service by regular mail may be sufficient due process, even where the addressee claims non-receipt. We conclude service by ordinary mail here was sufficient to meet due process requirements.

The decision of the trial court is reversed and remanded with instructions to reinstate Lincoln's appeal of the Board's decision to discharge her.

CONOVER, P.J., and YOUNG, J., concur.